UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────────

CRYSTAL CALLAHAN,

                    Plaintiff,         **No. 6:17-cv-06245(MAT)**
                                       **DECISION AND ORDER**

          -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

────────────────────────────────

## I.  Introduction

     Represented by counsel, Crystal Callahan ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural Status

     On April 11, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 25, 2010. The claim was denied initially on August 23, 2012. Plaintiff filed a written request for hearing on October 22, 2012. On July 11, 2013, Administrative Law Judge ("ALJ") Joseph L. Brinkley held a hearing via videoconference. Plaintiff appeared with her attorney in Rochester, New York, and testified, as did impartial vocational expert ("VE")

Stephanie R. Archer. (T.41-76).[1] On August 23, 2013, ALJ Brinkley issued a decision finding that Plaintiff was not disabled. (T.18-35). This decision became the final decision of the Commissioner on August 27, 2014, when the Appeals Council denied Plaintiff's request for review.

Plaintiff filed an action in this Court, and on September 29, 2015, the undersigned remanded the claim to the Commissioner for further proceedings pursuant to the fourth sentence of section 205(g) of the Act. (T.671-88). On June 15, 2016, Plaintiff appeared with her attorney for a hearing before ALJ Connor O'Brien in Rochester, New York. (T.574-636). On February 16, 2017, ALJ O'Brien issued a decision finding Plaintiff not disabled. (T.544-72). The Appeals Council denied Plaintiff's request for review, making ALJ O'Brien's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for calculation and payment of benefits.

## III. The ALJ's Decision

At the outset of the decision, the ALJ noted that pursuant to the Court's remand order, the Appeals Council had issued the following instructions: (1) re-evaluate the treating source

---

[1]

Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

opinions of Dr. Ronald Spurling and Dr. Donovan Holder in light of the case law and regulatory factors; and (2) re-assess Plaintiff's mental and physical residual functional capacity as necessary in light of the re-evaluations of the treating source opinions.

At step one of the sequential evaluation, the ALJ found that Plaintiff last met the Act's insured status requirements on March 31, 2013, and did not engage in substantial gainful activity during the period from her the alleged onset date of October 25, 2010, through her date last insured.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: lumbar degenerative disc disease, obesity, fibromyalgia, affective disorder, and anxiety disorder. The ALJ found that Plaintiff's gastroesophageal reflux disease, sleep apnea, polycystic ovary disease, hypertension, and migraine headaches, when properly treated, resulted in only minimal, if any, limitations on her ability to perform work-related activities.

At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal a listed impairment. The ALJ gave particular consideration to Listings 1.04A, 1.04B, 1.04C, 12.04, and 12.06.

Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she can lift and carry 20 pounds occasionally and 10 pounds frequently; can

stand and/or walk for 4 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; needs a sit/stand opinion that allows her to change position every 60 minutes for up to 5 minutes; cannot climb ropes, ladders, or scaffolds; cannot balance on narrow, slippery or moving surfaces; cannot stoop to the floor, kneel, or crawl; occasionally needs a cane when walking; can occasionally crouch and climb stairs; cannot work overhead; can tolerate occasional exposure to extreme heat, extreme cold, wetness, humidity, and airborne irritants; must avoid hazards such as open water and unprotected heights; can occasionally drive; requires up to 3 additional, short, less than 5-minute unscheduled breaks beyond normally scheduled breaks; can adjust to occasional changes in the work setting; cannot interact with the public; cannot perform teamwork; and can work to meet daily goals but cannot maintain an hourly, machine-driven, assembly-line production rate.

At step four, the ALJ determined that Plaintiff has past relevant work as a receptionist (Dictionary of Occupational Titles ("DOT") 237.367-038), which the VE testified was sedentary and semiskilled work; as a mental retardation aide (DOT 355.377-018), which the VE testified was medium and skilled work; and as an EKG technician (DOT 078.362-018), which the VE testified was light and semiskilled work. The VE testified that a limitation precluding Plaintiff from any interaction with the public would eliminate

those jobs. Therefore, the ALJ concluded, Plaintiff is unable to perform her past relevant work as generally or actually performed.

At step five, the ALJ noted that Plaintiff was 42 years-old, making her a younger individual age 18-44, on the date last insured, with at least a high school education and the ability to communicate in English. The ALJ relied on the VE's testimony to find that Plaintiff can perform the requirements of such representative occupations as addresser (DOT 209.587-010, of which there are 81,300 jobs in the national economy); film touch-up inspector (DOT 726.684-050, of which there are 489,750 jobs in the national economy); and document preparer (DOT 249.587-018, of which there are 2,889,970 jobs in the national economy). Accordingly, the ALJ entered a finding of "not disabled."

## IV. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## V. Discussion

Plaintiff argues that the ALJ erred in weighing the opinions given by her treating psychiatrist, Ronald Spurling, M.D.; primary care physician Agata Olszowska, M.D.; and pain management specialist, Donovan Holder, M.D., which resulted in an RFC assessment unsupported by substantial evidence. Plaintiff also argues that the ALJ's credibility assessment is flawed.

### A. Mental RFC Assessment and the ALJ's Application of the Treating Physician Rule to Dr. Spurling's Opinions

#### 1. Dr. Spurling's Opinions

Plaintiff began treating with Dr. Spurling in January of 2012. (T.378). At that time, Dr. Spurling noted a long history of anxiety and symptoms related to her mood disorder symptoms. (T.380). During the evaluation, Dr. Spurling observed anxiety and circumstantial

thinking; he diagnosed Plaintiff with bipolar disorder. (T.380, 381).

On May 13, 2013, Dr. Spurling completed a form titled, "Evaluation of the Residual Functional Capacity of the Mentally Impaired Patient." (T.510-13). In connection with Plaintiff's "ability to understand and remember," Dr. Spurling rated her ability to comprehend and carry out simple instructions as "[g]ood," which the form defined as a "limited but satisfactory" ability to function. (T.510). Dr. Spurling rated her ability to remember work procedures and to remember detailed instructions as "[f]air," which the form defined as having a "seriously limited" ability that "will result in periods of unsatisfactory performance at unpredictable times." (Id.). In these two areas, Dr. Spurling noted that Plaintiff's abilities would be "okay as long as not under significant stress." (T.510). With regard to "social interactions," Dr. Spurling assessed her ability to respond appropriately to supervisors and ability to respond appropriately to co-workers as "[p]oor," (T.511), which the form defined as having "[n]o useful ability to function in this area." (T.510). With regard to "sustained concentration and persistence," Dr. Spurling rated Plaintiff's ability to complete a normal workday on a sustained basis and to concentrate and attend to a task over an eight-hour period as "[p]oor." (T.511). Dr. Spurling opined that Plaintiff's ability to function independently on a job, exercise

-7-

appropriate judgment, abide by occupational rules, and make appropriate judgments was "fair." (T.511-12). As far as "routine functions" and "stress," Dr. Spurling opined that her ability to maintain social functioning and to tolerate customary work pressures in a work setting including production requirements and demands was "[p]oor," (T.512), which, as noted above, the form defined as having "[n]o useful ability to function in this area." (T.510). Dr. Spurling commented that "stress leads to extremes of behavior such as agitation, yelling, or anxiety/panic." (T.512). Dr. Spurling stated that she would be absent from work due to her impairments more than 4 days per month, and he opined that she could not work more than 4 hours per day or 15 to 20 hours per week. (T.513). He stated that these limitations had been reasonably consistent and continuing since October 25, 2010. (Id.).

On February 16, 2016, Dr. Spurling indicated that there had been no change in the limitations identified in his May 13, 2013 evaluation. (T.945).

## 2. The Treating Physician Rule

When an ALJ declines to accord controlling weight to a treating physician's opinion, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion[,]" id. (quoting 20 C.F.R. § 404.1527(d)(2)), such as "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the

treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(d)(2)). A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Comm'r of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)).

### 3. The ALJ's Weighing of Dr. Spurling's Opinions

With respect to the first factor, Dr. Spurling began seeing Plaintiff on January 3, 2012, and treated her on more than two dozen occasions. (T.370-81, 417-22, 446-51, 476-78, 515-17, 895-932, 940-58). He had seen her ten times before his first disability evaluation on May 13, 2013; on February 16, 2016, he reaffirmed that evaluation without change after a further sixteen visits. There is no doubt that Dr. Spurling qualifies as a "treating

source" for purposes of the treating physician presumption of deference. See Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) ("Whether the 'treating physician' rule is appropriately applied depends on the nature of the ongoing physician-treatment relationship.") (quotation omitted). With regard to the fourth factor, given his specialization in psychiatry, Dr. Spurling is well-qualified to opine on the nature and extent of the limitations resulting from Plaintiff's mental impairments.

However, the ALJ gave "little weight" to Dr. Spurling's opinions, stating that "they are inconsistent with the objective medical evidence and record as a whole." (T.560). The Court found in Plaintiff's previous case that a statement of such generality fails to provide any insight as to what, if any, medical evidence the ALJ used to reject Dr. Spurling's opinion. See Callahan v. Colvin, No. 6:14-CV-06553 MAT, 2015 WL 5712334, at *4 (W.D.N.Y. Sept. 29, 2015) (ALJ's "vague and conclusory" statement that Dr. Spurling's opinion "'is inconsistent with the objective medical evidentiary record and his own treatment notes, when viewed in its totality'" "does not allow for meaningful judicial review and does not constitute a 'good reason' for purposes of fulfilling the Commissioner's duty under the applicable regulations"). The ALJ here continued by asserting that Dr. Spurling's opinions were "internally inconsistent with his contemporaneous treatment notes, within which he repeatedly documented that the claimant seemed to

be doing fairly well overall, noting that her mood had improved, insight and judgment were fair, and had intact memory, attention span, and concentration." (T.560 (citing Exhibit ("Ex.") 19F (T.475-78)). However, the ALJ only cited one treatment note (i.e., the March 28, 2013 visit). Moreover, "[t]he Regulations clearly recognize that the functioning of an individual with a mental impairment may 'vary considerably over time.'" Warren v. Astrue, No. 09-CV-6217, 2010 WL 2998679, at *7 (W.D.N.Y. July 27, 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(2) (former))[2]. The Second Circuit has held that an ALJ may not reject a treating physician's opinion based solely on perceived inconsistencies between that opinion and his or her clinical findings or treatment notes. See Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) ("The ALJ erred in rejecting the opinions of these [three treating] physicians solely on the basis that the opinions allegedly conflicted with the physicians' own clinical findings."); Griffel v. Berryhill, No. 16-CV-1772(MKB), 2017 WL 4286254, at *9 n. 10 (E.D.N.Y. Sept. 26, 2017) ("To the extent the ALJ rejected [the treating source]'s opinions on the basis that [the treating

---

[2]

The current version of the regulation similarly recognizes that a temporary improvement in a mental impairment does not fatally undermine a disability claim. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(4)(a) ("[The SSA] will not find that you are able to work solely because you have a period(s) of improvement (remission), or that you are disabled solely because you have a period of worsening (exacerbation), of your mental disorder."); id., § 12.00F(4)(b) ("If you have a mental disorder involving exacerbations and remissions, you may be able to use the four areas of mental functioning to work for a few weeks or months. Recurrence or worsening of symptoms and signs, however, can interfere enough to render you unable to sustain the work.").

source]'s '[m]ental status examinations consistently demonstrate[d] normal to mild cognitive symptoms,' such rejection was erroneous because the ALJ may only reject [the treating source]'s opinions based on contradictory medical opinions, not based on the ALJ's interpretation of [the claimant]'s medical records.") (citing Balsamo, 142 F.3d at 80; Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) (unpublished opn.)).

The ALJ also found Dr. Spurling's opinion to be inconsistent with Dr. Olszowska's note of November 30, 2012, stating that Plaintiff's "[d]epression, anxiety and panic attacks seem to be well-controlled." (T.561 (citing T.461)). Plaintiff argues that this was error because "greater weight should be accorded the opinion of a qualified specialist." (Plaintiff's Brief ("Pl's Br.") (Dkt #9-1) at 14). As Plaintiff points out, Dr. Olszowska is not a specialist in the area of psychiatry, Plaintiff's purpose in seeing Dr. Olszowska that day was not to obtain mental health treatment, and Dr. Olszowska did not perform a detailed mental status examination or psychological testing.

The ALJ found Dr. Spurling's opinion to be inconsistent with consultative psychologist Dr. Yu-Ying Lin's findings on mental status examination that Plaintiff's "demeanor was cooperative, thought processes were coherent and goal directed, affect was full ranged and appropriate, sensorium was clear, had no hallucinations, delusions, or paranoia and attention and concentration were

intact." (T.561 (citing T.402)). As an initial matter, the Court notes that "[o]pinions from a one-time consultative physician are not ordinarily entitled to significant weight, in particular where that physician does not have the benefit of the complete medical record." Duran v. Colvin, No. 14 CIV. 8677(HBP), 2016 WL 5369481, at *18 (S.D.N.Y. Sept. 26, 2016) (citing, inter alia, Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("We have previously cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.") (citation omitted); Tarsia v. Astrue, 418 F. App'x 16, 18 (2d Cir. 2011) (summary order) ("Because it is unclear whether [the consulting physician] reviewed all of [claimant's] relevant medical information, his opinion is not 'supported by evidence of record' as required to override the opinion of [the] treating physician.")). The fact that Plaintiff was described as pleasant and cooperative by Dr. Lin, Dr. Spurling, and Dr. Olszowska does not negate the severity of her mental impairments, as individuals with mental illnesses often "adopt a highly restricted and/or inflexible lifestyle within which they appear to function well," SSR 85-15, 1985 WL 1985 WL 56857, at *6. A claimant's ability to perform adequately when she is in structured, supportive settings—such as medical or psychiatric appointments, which have lowered psychological pressures and interpersonal demands—does not necessarily predict performance and ability to cope in the

competitive work environment. See id. ("The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances."). In addition, the ALJ omitted to mention Dr. Lin's observations that Plaintiff's mood was "dysthymic" and that her memory skills were impaired due to anxiety in the examination. (T.402).

Furthermore, portions of Dr. Lin's opinion—which the ALJ selectively rejected—were consistent with Dr. Spurling's assessed limitations on Plaintiff's ability to relate to others and handle stress. As noted above, with regard to "social interactions," Dr. Spurling assessed Plaintiff's ability to respond appropriately to supervisors and ability to respond appropriately to co-workers as "[p]oor" (T.511), which the form defined as having "[n]o useful ability to function in this area." (T.510). Dr. Spurling noted she was "likely to have exacerbation of anxiety or anger/irritability if she feels accused, singled out by supervisor" and she "has varying mood with anxiety and irritability." (T.511). As far as "routine functions" and "stress," Dr. Spurling opined that her ability to maintain social functioning and to tolerate customary work pressures in a work setting including production requirements and demands was "[p]oor" (T.512), again defined as having "[n]o useful ability to function in this area." (T.510). Similarly, Dr. Lin opined that Plaintiff "cannot relate adequately with

others" and "cannot deal appropriately with stress." (T.403).
Nonetheless, Dr. Lin opined that Plaintiff's psychiatric impairment
"does not appear to be significant enough to interfere with [her]
ability to function on a daily basis." (T.403). Dr. Lin's opinion
thus contains a significant internal inconsistency. As Plaintiff
points out, the Commissioner's rulings indicate that severe
deficits in interpersonal relations and dealing with stress do have
a major impact on a claimant's ability to fulfill the mental
demands of competitive employment. See, e.g., SSR 85-15, 1985 WL
56857, at *4 (S.S.A. 1985) ("The basic mental demands of
competitive, remunerative, unskilled work include the abilities (on
a sustained basis) to . . . respond appropriately to supervision,
coworkers, and usual work situations; and to deal with changes in
a routine work setting. A substantial loss of ability to meet any
of these basic work-related activities would severely limit the
potential occupational base. This, in turn, would justify a finding
of disability because even favorable age, education, or work
experience will not offset such a severely limited occupational
base."). SSR 85-15 thus "emphasizes the need to carefully evaluate
a claimant's ability to deal with stress in the workplace."
Sheffield v. Astrue, No. 3:11-CV-1176(GLS), 2012 WL 5966610, at *2
(N.D.N.Y. Nov. 28, 2012) (citing SSR 85-15, 1985 WL 56857, at *5-6
(1985)). However, the ALJ ignored the fact that both treating
psychiatrist Dr. Spurling and consultative psychologist Dr. Lin

both imposed extremely restrictive limitations on Plaintiff's ability to deal with stress and interact appropriately with others, and instead determined to afford "great weight" to the non-restrictive portions of Dr. Lin's opinion. The fact that the ALJ gave greater weight to the opinion of a consultative psychologist, which contained an obvious inconsistency, discussed above, undermines the rationality of the ALJ's analysis of treating psychiatrist Dr. Spurling's opinion and constitutes an improper cherry-picking of the record. See Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) ("It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); other citation omitted).

Moreover, in performing the special psychiatric technique at steps two and three, the ALJ assigned "marked" limitations to Plaintiff in the domain of social functioning. (T.553). In support of this finding, the ALJ relied on Plaintiff's report to Dr. Lin on June 20, 2012, "that she was socially withdrawn, and was particularly anxious around crowds or in social situations," "does not like to leave her house by herself, and feels like other people are out to get her," and she testified that she "did not get along with most of her coworkers, and does not like being around other people." (T.553). It therefore is unclear to the Court why the ALJ

would assign "marked" limitations to Plaintiff's ability to function socially yet reject Dr. Lin's and Dr. Spurling's opinions about Plaintiff's limitations in dealing with stress and navigating social relationships.

## C.  Credibility Assessment

To support a credibility finding regarding a claimant's subjective complaints, the ALJ must do more than merely refer to the record evidence as a whole but must identify evidence in a sufficiently specific fashion so as to permit meaningful appellate review.  See 96-8p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996) ("The RFC assessment must include a discussion of why reported symptom related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."); SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

The Court finds that the ALJ's credibility assessment relating to Plaintiff's symptomatology due to her mental impairments is not supported by substantial evidence. The ALJ found that Dr. Spurling noted "on several occasions" that Plaintiff was "doing well with

improved mood on her medications." (T.559). However, "[t]he Regulations clearly recognize that the functioning of an individual with a mental impairment may 'vary considerably over time.'" <u>Warren v. Astrue</u>, No. 09-CV-6217, 2010 WL 2998679, at *7 (W.D.N.Y. July 27, 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(2) (former)).[3] The ALJ also found it significant that Plaintiff was not psychotic, suicidal, or ever required hospitalization; however, the Court is unaware of any requirement that, in order to be considered disabled due to mental impairments, a claimant must exhibit certain symptoms or undergo in-patient care. To the extent that the ALJ found that Plaintiff's ability perform childcare activities undermines her psychiatric complaints, this was error. <u>See</u> <u>Harris v. Colvin</u>, 149 F. Supp.3d 435, 444 (W.D.N.Y. 2016) ("The ALJ . . . failed to recognize the differences between being a parent, caring for one's children at home, and performing substantial gainful employment in the competitive workplace on a 'regular and continuing basis,' i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule[,]'" (quoting SSR 96–8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996);

---

[3] The current version of the regulation similarly recognizes that a temporary improvement in a mental impairment does not fatally undermine a disability claim. <u>See</u> 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(4)(a) ("[The SSA] will not find that you are able to work solely because you have a period(s) of improvement (remission), or that you are disabled solely because you have a period of worsening (exacerbation), of your mental disorder."); <u>id.</u>, § 12.00F(4)(b) ("If you have a mental disorder involving exacerbations and remissions, you may be able to use the four areas of mental functioning to work for a few weeks or months. Recurrence or worsening of symptoms and signs, however, can interfere enough to render you unable to sustain the work.").

citing <u>Gentle v. Barnhart</u>, 430 F.3d 865, 868 (7th Cir. 2005) ("[T]aking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not."); <u>Zuback v. Colvin</u>, No. 4:14-CV-00602-GBC, 2015 WL 5474846, at *19 (M.D. Pa. Sept. 15, 2015) ("[C]aring for children allows for flexibility and rest breaks. . . . Moreover, parents may go to great lengths to care for their children that would not be sustainable in the workplace, and should not be discouraged from doing so."); other citations omitted).

### D.   Remedy

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. The standard for directing a remand for calculation of benefits is met where the record persuasively demonstrates the claimant's disability, <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980), and there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, <u>Butts v. Barnhart</u>, 388 F.3d 377, 385-86 (2d Cir. 2004).

As discussed above, the Court finds that the ALJ erred in failing to give controlling weight to the opinions of treating psychiatrist Dr. Spurling and cherry-picked the record in order to justify assigning the greatest weight to the least restrictive portions of consultative psychologist Dr. Lin's opinion, which also

contained an unexplained inconsistency (i.e., Plaintiff's psychiatric impairments do not appear to be significant enough to interfere with her ability to function on a daily basis, yet Plaintiff cannot deal with stress and cannot adequately relate to people). (T.403). At the hearing on remand, the VE testified that an individual would not be able to sustain employment with any of the following limitations identified by Dr. Spurling: (1) being absent from work more than two times per month, (2) being occasionally unable to respond appropriately to criticism or supervision, (3) being off-task 15 percent or more of the work-day or (4) being unable to tolerate ordinary work stress. (T.631-33). The Court finds that had the opinions of Plaintiff's treating psychiatrist Dr. Spurling been accorded their proper weight, and an appropriate credibility determination been made, a finding that Plaintiff is disabled due to her mental impairments is compelled.

Based on this finding that Plaintiff's mental impairments, standing alone, are disabling, the Court need not address Plaintiff's other arguments regarding errors in the ALJ's physical RFC assessment and analysis of the credibility of Plaintiff's subjective physical complaints.

## VI. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision was legally erroneous and unsupported by substantial evidence. Accordingly, Defendant's motion for judgment

on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     April 4, 2018
           Rochester, New York.